# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Rogelio Garcia Valdez** and **Marbella** )
**Gomez** *on behalf of themselves and others* )
*similarly situated*, )
)
      Plaintiffs, )
)   Case No.: 2:22-cv-2276-TC-ADM
vs. )
)
**Signature Landscape, LLC** )
(Kansas Limited Liability Corporation) )
)
      Defendant. )

## PLAINTIFFS' SUPPLEMENTAL BRIEF

COME NOW the Plaintiffs, on behalf of themselves and others similarly situated, and pursuant to this Court's June 2, 2026 Order (Doc. 256), hereby provide the following supplemental briefing regarding the two issues identified therein.

### I.      Plaintiffs' Motion for Reconsideration

On July 18, 2022, the Plaintiff Rogelio Valdez filed his Complaint against the Defendant Signature Landscape, LLC ("Signature"). (Doc. 1). This lawsuit alleged various wage and hour violations including a Rule 23 class action claim under the Missouri Minimum Wage Law ("MMWL"), Mo.Rev.Stat., 290.500, *et seq*. The proposed class encompassed Landscape Laborers who were not paid overtime for work performed in Missouri "at any time from three years prior to filing this Complaint . . . ." (*Id.* at ¶ 48). On September 8, 2022, a First Amended Complaint was filed adding Plaintiff Marbella Gomez. (Doc. 9). It asserted the same MMWL class claim. (*Id.* at ¶ 50).

On May 5, 2025, the Plaintiffs filed a Motion for Class Certification under Rule 23 for the MMWL claim. This motion sought to certify a class of all Landscape Laborers who were

not paid overtime for work performed in Missouri for three years from the filing of the Complaint. (Doc. 217). In opposition, Signature made no argument regarding the class definition insofar as it included employees from the three-year period preceding the filing of the Complaint. (Doc. 224). In its April 28, 2026 Memorandum and Order, the Court stated, "plaintiffs motion for class certification is granted." (Doc. 248 at 1). Later in the same Order, the Court defined the class as one that "extends three years prior to the filing of Doc. 217" (Plaintiffs' May 5, 2025 Motion for Class Certification). (*Id.* at 47).

While preparing a class notice for the Court's review and approval, the parties exchanged draft notices. In its proposed edits, Defendant argued that the class period should extend three years from the filing of Plaintiffs' Motion for Class Certification rather than three years from the filing of the Complaint. Defendant pointed to the language on the last page of the Court's order. This was the first time Plaintiffs noticed this reference. The communications regarding the proposed notice occurred more than fourteen days after the Order was issued. Given that their Motion was granted, Plaintiffs incorrectly assumed it granted the three years from the Complaint. Simply put, Counsel for Plaintiffs frankly missed this reference to Doc. 217. The Plaintiffs felt compelled to call this issue to the Court's attention. To Plaintiffs' knowledge, a motion for reconsideration was the only procedural mechanism available to seek such relief. Because more than fourteen days have passed since the Court's Order, Plaintiffs sought leave under Local Rule 7.3 to file a motion outside the applicable deadline. (Doc. 255). Was this delay "excusable neglect" under Rule 6?

In determining whether a party can file a pleading out of time under Rule 6, "the Court considers (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the

reasonable control of the moving party and (4) the existence of good faith on the part of the moving party." *Scott v. Power Plant Maintenance Specialists, Inc.*, 2010 WL 1881058, at *2 (D.Kan. May 10, 2010) (citing *U.S. v. Torres,* 372 F.3d 1159, 1162 (10th Cir. 2004)).  Almost three additional years of overtime pay are at issue depending on which tolling date applies.

### A.    Prejudice to the Defendant:

It is difficult to see how briefing this statute of limitations issue is prejudicial to the Defendant.  Briefing it four weeks from the Court's order compared to two weeks at this stage in the litigation causes no prejudice.  This issue will arise again during the Court's review and approval of the class notice, in pretrial briefing, in motions in limine concerning class damages evidence, and in the preparation of jury instructions.  It is also worth noting that Signature never opposed the Plaintiffs' tolling position when responding to the Motion for Class Certification.

### B.    Length of Delay and Impact on Judicial Proceedings:

Other than processing the Court approved class notice and limited additional discovery on class damages, this case is ready for trial.  Any delay is *de minimis* given that this case has been pending since 2022.  Also, a brief delay is warranted given the need for the Court to fully address the statute of limitations tolling issue—a significant issue regarding class damages.  The Court should address this issue while it is under its control.  Otherwise, the issue will likely be raised again in any future appeal.  Also, the length of the delay was two weeks from the deadline—a relatively short period of time.  *See e.g., Welch v. Centex Home Equity Co., LLC,* No. 03–2132–JWL–DJW, 2004 WL 2348295, at *1 (D.Kan. Apr. 23, 2004) (two-month delay between original answer deadline and plaintiff's request for leave to file answer out of time "relatively innocuous").

3

**C.    The Reason for Delay and Whether it was in Plaintiffs' Control:**

Above, the Plaintiffs described how this delay came about.  In *Scott*, the defendant argued "inadvertence is usually insufficient justification for failing to comply with a deadline," but "a district court does not abuse its discretion when granting leave to file out of time when the delay occurs because of carelessness instead of bad faith."  2010 WL 1881058, at *3 (citing *Consol. Mktg. Corp. v. Frontier Commc'ns. Intern., Inc.,* 95–2403–KHV, 1996 WL 225198, at *2 (D.Kan. Mar. 19, 1996)).  There, like here, the defendant acknowledged the mistake but argued "a careless mistake not taken in bad faith." *Id.*  The court stated, "[i]nadvertent delays in filing, however, can qualify as excusable neglect." *Id.* (citing *Griffin v. Suthers,* 156 Fed. Appx. 66, 72 (10th Cir.2006).  "[T]he concept of 'excusable neglect' is elastic and is not limited strictly to omissions beyond the control of the movant." *Id.*

"Generally, courts are more forgiving of missed deadlines caused by clerical calendaring errors, mathematical miscalculations of deadlines and mishandling of documents." *Id.*  "In contrast, courts are less forgiving when missed deadlines occur because of poor lawyering, *e.g.,* where counsel misconstrues or misinterprets the rules or law or makes poor tactical decisions." *Id.* at *4.  Here, the Plaintiffs' circumstances fall under the former and not the latter scenario.  Given that their motion was granted, and the motion asked for three years from the filing of the Complaint without Defendant's objection, missing the Court's reference to three years from Doc. 217 is an acceptable oversight.  This would be excusable neglect.

**D.    Whether the Movant Acted in Good Faith:**

There is no evidence that Plaintiffs were acting in bad faith.  When called to the Plaintiffs' attention, they raised this issue with the Court, believing it to be an error in the MMWL Rule 23 class definition.  Regardless of whether Plaintiffs satisfied Rule 6's "excusable

4

neglect" standard for filing a motion for reconsideration, the Court appears prepared to address the very issue Plaintiffs seek to raise. There is no doubt that the Court wants to resolve the tolling issue correctly. To that end, it has requested full briefing on the issue before determining whether Plaintiffs are entitled to the relief they seek.

## II. Tolling Started When the Complaint Was Filed

### A. Introduction

The issue before the Court is whether the MMWL claims of the individual putative class members were tolled upon the filing of the Complaint on July 18, 2022, or only upon Plaintiffs' May 5, 2025 Motion for Class Certification. If the latter approach is adopted, putative class members would have been required to file individual "protective filings" during the pendency of this case to preserve their claims. Yet courts addressing this issue have uniformly recognized that such a requirement is inconsistent with the efficiency and economy of litigation that the class-action mechanism is intended to promote.

The case law addressing class action tolling involves two related, but distinct, questions. The first question is whether the filing of a class action tolls the claims of the individual putative class members during the pendency of that action. The second concerns whether tolling generated by a class action extends to subsequent individual or class actions filed after the earlier class action has been denied, dismissed, or otherwise concluded. Or as stated in *American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974), "whether parties should be allowed to join or intervene as members of a 'spurious' class after the termination of a limitation period, when the initial class action complaint had been filed before the applicable statute of limitations period had run." *Id.* at 549. This second conversation dominates the courts' discussions post-*American Pipe*. However, that scenario is wholly distinct from the circumstances before this Court. That

5

said, the relevant threshold question is one common to all these cases: whether the claims of putative class members are tolled during the pendency of the class action.  As discussed herein, the answer is uniformly yes.  The MMWL class claims were tolled on July 18, 2022—the date that claim was filed.  Courts vary only on whether and how such tolling should be applied to subsequent individual or class action lawsuits asserting the same claim against the same defendant.

**B.      Equitable and Legal Tolling**

In *American Pipe*, the Supreme Court was asked to recognize a new type of tolling—tolling created by the class action mechanism.  Two types of tolling are discussed in post-*American Pipe* cases.  Legal tolling arises from a statute, rule, or other recognized legal principle that automatically suspends the limitations period under specified circumstances.  Whereas, equitable tolling is a judicially created doctrine that permits tolling when fairness requires it despite the absence of an express legal basis.

**C.      *American Pipe* and its U.S. Supreme Court Progeny**

*American Pipe* involved claims brought under the federal Sherman Act, Clayton Act and the False Claims Act.  414 U.S. at 540.  Some states and municipalities sought to later intervene in the case as individual plaintiffs after the class certification was denied with tolling applied.  *Id.* at 543-44.  At issue was whether these states and municipalities could invoke tolling of the Clayton Act's one-year statute of limitations based on their status as putative class members in claims asserted by the United States.  *Id.* at 540–45.  Recognizing conflicting holdings in the lower courts, the Supreme Court addressed this issue for the first time.  *Id.* at 550.

The Court addressed two concerns presented by this issue: preserving the efficiency and economy promoted by the class-action mechanism while respecting the purposes served by

6

statutes of limitations.  Looking to Fed.R.Civ.P. 23, the Court stated its purpose "is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action."  414 U.S. at 552.  "The policies of ensuring essential fairness to defendants . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554-55 (citation omitted). "This rule is in no way inconsistent with the functional operation of a statute of limitations." *Id.* at 554.  *American Pipe* held that putative class members' claims are tolled when the Rule 23 class claim is asserted.  *See, id.* at 555 ("[T]he tolling rule we establish here is consistent both with the procedures of Rule 23 and with the proper function of the limitations statute.").  "A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id.* at 553.  "Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable . . . a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions." *Id.* at 553-54.

The *American Pipe* respondents argued, "that irrespective of the policies inherent in Rule 23 and in statutes of limitations, the federal courts are powerless to extend the limitation period beyond the period set by Congress because that period is a 'substantive' element of the right conferred on antitrust plaintiffs and cannot be extended or restricted by judicial decision or by court rule." 414 U.S. at 556.  The respondents further claimed that, "[t]he inclusion of the

limitation and the tolling period . . . makes the 'substantive' statute immune from extension by 'procedural' rules." *Id.*  The petitioners relied on *The Harrisburg*, 119 U.S. 199, 200 (1886), to argue that when a statute creates a cause of action and includes a statute of limitations, the limitations period restricts the underlying liability itself rather than merely the remedy.  *Id.* at 557.  *American Pipe* found *The Harrisburg* holding was more limited than that.  It "held that when a litigant in a federal court asserted a cause of action based upon a state statute he was bound by the limitation period contained within that statute rather than by a federal time limit." *American Pipe*, 414 U.S. at 557. "*The Harrisburg* did not purport to define or restrict federal judicial power to delineate circumstances where the applicable statute of limitations would be tolled." *Id.* "[T]he fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled." *Id.*  (citing *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 427 (1965)). "The proper test is not whether a time limitation is 'substantive' or 'procedural,' but whether tolling the limitation in a given context is consonant with the legislative scheme." *Id.* at 557-58.  While some contend that *American Pipe*'s holding only applies to tolling of class claims under federal statutes, its discussion of *The Harrisburg* case suggests otherwise.  *The Harrisburg* involved a plaintiff asserting a wrongful death claim under Pennsylvania statute.  119 U.S. at 199-200.  Regarding this state law claim, *American Pipe* held that *The Harrisburg* "did not purport to define or restrict federal judicial power to delineate circumstances where the applicable statute of limitations would be tolled."  414 U.S. at 557.  In other words, although *American Pipe* involved a federal statute, the Court recognized that federal courts may also toll class claims brought under state law.[1]

---

[1] This same conclusion was applied later in *May v. AC & S, Inc.*, 812 F. Supp. 934, 938 (E.D. Mo. 1993), *infra.*

The Supreme Court issued subsequent opinions clarifying *American Pipe*'s holding. In *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974), the Court held "that commencement of a class action tolls the applicable statute of limitations as to all members of the class," whether the class was ultimately certified or not. *Id.* at 176 n. 13. In *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983), the Court extended tolling to putative class members' individual actions brought after the denial of class certification. *Id.* at 350. There, the Court underscored *American Pipe*'s holding that "once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Id.* at 354. Putative class members who "fear [ ] that class certification may be denied" would have to file separate protective actions prior to the expiration of their own limitations periods. *Id.* at 350-51. "The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* In *China Agritech v. Michael H. Resh*, 584 U.S. 732 (2018), the Court held that *American Pipe* tolling does not apply to subsequently filed class action claims. *Id.* at 748. Again, the Court reinforced the purpose behind protecting individual claims of the putative class in pending class actions. "The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well. Extending *American Pipe* tolling to successive class actions does not serve that purpose." *Id.* Tolling for class actions would allow them to be filed indefinitely (*i.e.*, harming the defendant's interests protected by statutes of limitations to be free from old claims). *Id.* at 743.

Whether *American Pipe* was based on equitable or legal tolling was initially muddled in subsequent opinions. In *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221 (2012), the Supreme Court stated, "[a]lthough we did not employ the term 'legal tolling,' [in *American Pipe*] some federal courts have used that term to describe our holding on the ground that the rule 'is

derived from a statutory source,' whereas equitable tolling is 'judicially created.' " *Id.* at 226 n. 6. Although *Credit Suisse* did not definitively resolve whether *American Pipe* tolling is legal or equitable in nature, it confirmed that its tolling doctrine is rooted in "the efficiency and economy of litigation," which Rule 23 class actions are designed to promote. *Id.* *California Public Employees' Retirement System* [*CalPERS*] *v. ANZ Securities, Inc.*, 582 U.S. 497 (2017), ruled on whether *American Pipe* tolling applied to statutes of repose. *Id.* at 499. While conducting its analysis, the Court stated that *American Pipe* had relied upon equitable tolling. *Id.* at 499. While statutes of repose are not subject to tolling, *American Pipe* held that putative class members may rely on a pending class action to preserve their claims without resorting to individual protective filings. *Id.* at 509. All of these cases recognized that *American Pipe* tolling derives from Rule 23's goal of promoting the efficiency and economy of litigation for putative class members. Although grounded in this Federal Rule of Civil Procedure, the Supreme Court characterized that tolling as equitable in nature. As some have observed, "[t]he promotion of efficiency for individual litigants is thus itself the promotion of equity." Jeremy L. Brown, *The Misunderstood Role of Reliance in American Pipe Tolling*, 84 Univ. of Chicago L. Rev. 686, 701 (2021).

**D.     The Tenth Circuit Applying *American Pipe***

In *State Farm Mutual Auto. Ins. Co. v. Boellstorff,* 540 F.3d 1223 (10th Cir. 2008), the defendant argued that plaintiff's claim brought under Colorado law was outside the statute of limitations. *Id.* at 1224. Citing *American Pipe*, the plaintiff argued that her individual claims were tolled by an earlier class action asserting the same claims against the defendant. *Id.* In deciding this, *State Farm* held "this is a diversity action, we must apply Colorado law in deciding whether [plaintiff's] claims are time-barred." *Id.* at 1228. *State Farm* described where courts should look for guidance. First, the courts should look to the state's Supreme Court. Absent direction from

10

this court, " 'decisions of a state's intermediate appellate courts [present] some evidence of how the state supreme court would decide the issue, though such decisions are only persuasive authority.' " *Id.* (citation omitted). "[W]e must follow Colorado's tolling rules, as they are " 'an integral part of the several policies served by the statute of limitations.' " *Id.* (citations omitted).

Following *American Pipe*'s lead, *State Farm* first turned to Colorado's version of Rule 23— Colorado Rule of Civil Procedure 23. In support of applying *American Pipe* tolling, the court found that "Colorado's Rule 23 'is virtually identical' to the Federal Rule, and so Colorado courts 'rely on cases applying the federal rule.' " 540 F.3d at 1228 (citations omitted). *State Farm* also concluded that Colorado Supreme Court precedent supports the application of *American Pipe* class-action tolling. *Id.* (citing *Kuhn v. Colo. Dep't of Rev.,* 897 P.2d 792, 795 & 798 (Colo. 1995) (affirming, without comment on *American Pipe,* a trial court order asserting that "[t]he filing of a class action lawsuit tolls the limitations period as to all putative class members, even before the certification of the class"). *State Farm* looked to *American Pipe*'s discussion regarding the purpose of class actions. *Id.* at 1229. "Conceptually, *American Pipe* incarnates the principle that the class action is a representative creature." *Id.* (citing *American Pipe,* 414 U.S. at 550). "Thus, the filing of a class action, in a classic legal fiction, causes the courts to treat 'members of the asserted class' as if they 'hav[e] instituted their own actions, at least so long as they continue to be members of the class ...' and they have 'the benefit of tolling ... for as long as the class action purports to assert their claims.' " *Id.* (quoting *In re WorldCom Securities Litigation,* 496 F.3d 245, 255 (2d Cir. 2007)). "Pragmatically, [*American Pipe*] also concluded that a tolling rule was necessary to advance the goals of Rule 23, namely 'the efficiency and economy of litigation.' " *Id.* (quoting *American Pipe,* 414 U.S. at 553). Finally, *State Farm* found that applying *American Pipe* in Colorado "did not subvert the purpose of statutes of limitation" in Colorado's law. Statute of

11

limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (quoting *American Pipe,* 414 U.S. at 554). "The class action 'notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' " *Id.* (quoting *American Pipe,* 414 U.S. at 554). This is an equitable analysis for sure.

In the final section of this brief, Plaintiffs will demonstrate that *State Farm*'s framework for determining Colorado's application of *American Pipe* yields the same result under Missouri law. Before turning to that analysis, Plaintiffs next address the Missouri Supreme Court's treatment of *American Pipe* and the later Missouri decisions interpreting and applying that holding.

**E.     The Missouri Supreme Court Addresses *American Pipe* Tolling**

As *State Farm, supra,* looked to the case law of Colorado, exploring Missouri opinions regarding *American Pipe* is necessary. In *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180 (Mo. 2014), *as modified* (Aug. 19, 2014), the plaintiff brought a class action claim for breach of a merger agreement. The trial court found that he filed the action outside Missouri's five-year statute of limitations for breach-of-contract claims and dismissed the case on that basis. *Id.* at 181. On appeal, the plaintiff relied on *American Pipe* to argue that the five-year statute of limitations was tolled by an earlier Ohio class action filed against the same defendant, Nestle. *Id.* at 181, 183. *Rolwing* found *American Pipe* "materially distinguishable" to the facts presented. *Id.*

12

at 184. *American Pipe* did not address whether a subsequently filed class action could benefit from tolling generated by an earlier class action.[2]

> *American Pipe* involved the tolling of **individual** federal actions while a federal class action was **pending** to **preserve the underlying purpose** of the class action procedure. This case involves **two independent state class actions**. None of the concerns regarding **preservation of the purpose of class** actions is present in this case. *American Pipe* does not support Rolwing's tolling argument.

*Id.* (emphasis added). What *Rolwing* found "materially distinguishable" was the plaintiff's effort to use an earlier class action to toll the limitations period for a subsequently filed class action. Absent this fact, there is no indication that the Missouri Supreme Court rejected the application of *American Pipe* tolling for the **individual** putative class member's claims during the pendency of their class action. Distinguishing *American Pipe* in that circumstance does not amount to rejecting its tolling of putative class members' claims during the pendency of the class action. Had the Missouri Supreme Court intended to reject tolling in that context, one would expect it to have said so expressly. As discussed herein, the Missouri Court of Appeals in *City of Columbia* agreed that *Rolwing* did not reject *American Pipe* tolling in the circumstances presented here.

Rolwing was decided before *CalPERS*, *supra*. *Rolwing* was unclear as to whether it considered *American Pipe* tolling as legal or equitable in nature. After concluding that the facts before it did not warrant *American Pipe* tolling, *Rolwing* turned to the plaintiff's equitable-tolling argument.[3] "The only recognized equitable tolling principles apply when the plaintiff was prevented from timely filing suit by the defendant's actions or other pending litigation." *Id.* at 184. The court found that neither circumstance was present. *Id.* Of course, an individual

---

[2] *Rolwing* was decided three years before the Supreme Court's decision in *China Agritech*, *supra*, which likewise held that a prior class action cannot toll a subsequently filed class action

[3] One can reasonably argue that *Rolwing* understood *American Pipe* as a form of legal tolling because it appears to distinguish that doctrine from equitable tolling.

member of a pending putative class action lawsuit would fall under the "pending litigation" qualification.

**F.       Post-*Rolwing*, Missouri Courts Accept *American Pipe* Tolling**

As previously cited, the Eighth Circuit addressed *American Pipe* and *Rolwing* in *Thomas v. U.S. Bank N.A.*, 789 F.3d 900 (8th Cir. 2015)—a case initiated in Missouri federal court.  In *Thomas*, the plaintiffs filed a class action alleging that a group of defendants violated Missouri's Second Mortgage Loan Act.  *Id.* at 902.  Earlier, in 2000, a different group of borrowers filed a Missouri state-court class action against the same defendant alleging violations of the same statute.  *Id.*  Relying on *American Pipe*, the plaintiffs argued that their class claims were tolled during the pendency of the prior class action, which remained pending from 2000 until its dismissal on summary judgment in 2004.  *Id.* at 902-903.  "The district court dismissed the action, concluding the claims were barred by a three-year statute of limitations and the action is not saved under class action tolling principles." *Id.*  The Eighth Circuit agreed.  Looking to Missouri law for principles of tolling, *Thomas* quoted *Rolwing* as follows: " '*American Pipe* involved the tolling of individual federal actions while a federal class action was pending to preserve the underlying purpose of the class action procedure' but under Missouri law " 'statute[s] of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions.'" *Id.* at 903 (quoting *Rolwing,* 437 S.W.3d at 184) (citation omitted).  *Thomas* appears to have understood the plaintiffs' argument as invoking *American Pipe* legal tolling.  *Thomas* never addressed equitable tolling, observing that the plaintiffs had never raised this argument.  *Id.* at 903.  *Thomas* and *Rolwing* both considered *American Pipe* to be a case of legal tolling for federal claims under federal law.  However, years after these opinions, *CalPERS, supra,* clarified that *American Pipe* was based on

14

equitable tolling that could be applied to state law claims.  Given this context, *Thomas* provides little support for the proposition that *Rohwing* bars *American Pipe* tolling in Missouri.  Regardless, unlike the plaintiffs in *Thomas*, Plaintiffs here argue that Missouri equitable tolling permits the tolling of individual MMWL putative class members' claims while this class action remains pending.

Federal District Courts in Missouri have also addressed *Rohwing.*  In *Bray v. Simon & Schuster, Inc.*, 2014 WL 2893202 (W.D. Mo. June 25, 2014)—fifteen days after *Rohwing* was issued—the Western District of Missouri addressed a motion to dismiss a class action claim based on the parties' settlement.  *Id.* at *1.  The parties only settled the individual plaintiff's claims, and the settlement required dismissal of the entire action.  *Id.*  The court addressed whether Rule 23(e) required its approval of the dismissal for this individual's settlement.  *Id.* at *1-2.  In addressing the protection of putative class members' rights, the court discussed *in dicta* whether their claims were tolled during the pendency of the action.  *Id.* at *2.  This included a discussion of *Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C.*, 801 S.W.2d 382 (Mo.App. W.D. 1990), for the proposition that class members' claims are tolled while the case is pending.  *Id.*  In *Hyatt Corp.*, the "rescuers" who later became plaintiffs brought individual claims in Missouri state court.  They argued that the statute of limitations on their claims was tolled during the pendency of earlier Missouri state-court class actions in which they were putative class members.  801 S.W.2d 389.  Citing *American Pipe*, *Hyatt Corp.* held, "[t]hese class action complaints tolled the statute of limitations on behalf of *all* putative rescuers, including those who subsequently filed their own actions . . ."  *Id.*  In further discussing Missouri law, *Bray* acknowledged *Rohwing*'s recent holding as "suggest[ing] that Missouri does not follow the American Pipe rule."  2014 WL 2893202, at *3.  However, *Bray* did not provide any more analysis on this "suggestion."  As

15

previously discussed, nothing in *Rohwing* suggests that the claims of putative class members in a pending class action are not tolled upon the filing of that action.

One case addresses circumstances materially similar to those presented here and holds that the statute of limitations is tolled upon the filing of the class-action complaint. In *Speer v. Cerner Corp.*, No. 14-0204-CV-W-FJG, 2016 WL 5444648 (W.D. Mo. Sept. 27, 2016), the United States District Court for the Western District of Missouri addressed tolling of putative class members' claims in an ongoing class action. *Id.* at \*1. Like the current case, the plaintiffs brought a collective action under the FLSA, and a Rule 23 class claim under the MMWL. *Id.* The court granted class certification. Relying on *Thomas v. U.S. Bank N.A.*, 789 F.3d 900, 903 (8th Cir. 2015), defendant argued that "absent class members' [MMWL] damages [should be limited] to two years from the date that class certification is denied or granted"[4]—not two years from when the class claim was asserted. *Id.* at \*9. Arguing that federal courts must apply state law regarding statute of limitations, defendant stated that the "Missouri legislature has not enacted a law adopting equitable tolling to the claims of absent class members," [therefore] the statute of limitations is continuing to run on the claims of absent class members . . ." The court disagreed and held as follows:

> [P]utative class members' claims were legally **tolled** by the **filing of the class action complaint** on March 4, 2014. Equitable tolling, which is discussed in *Thomas*, has to do with the tolling of state law claims during the pendency of unsuccessful class action lawsuits—in other words, equitable tolling in this matter could apply only if the current motion for class certification was denied and a separate group of aggrieved individuals attempted to [later] file a lawsuit raising the same issues.

---

[4] Note, in 2015 the MMWL had a two-year statute of limitations. This was later amended to three years in 2018.

*Id.* (citing *American Pipe & Construction v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)) (emphasis added). *Speer* was decided one year before *CalPERS, supra* (holding that *American Pipe* involved equitable not legal tolling). The court did not discuss *Rolwing*.[5] Regardless of whether the tolling at issue was correctly characterized as legal or equitable, *Speer*'s holding is fully consistent with *Rolwing* because both can be reconciled with the principle that putative class members' claims are tolled during the pendency of the class action in which those claims are asserted.

One Missouri appellate court subsequently addressed the tolling principles discussed in *Rolwing*. In *City of Columbia v. Spectra Communications Group*, LLC, 652 S.W.3d 356 (Mo.App. E.D. 2022), the cities of Columbia and Joplin brought individual claims against the defendant for violation of their respective tax licensing ordinances. *Id.* at 358. Two years before this lawsuit, a separate class action against defendant was filed on May 10, 2012. *Id.* at 360 (citing *City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276, 278 (Mo. App. E.D. 2016)). That lawsuit asserted the same claims on behalf of a putative class of Missouri municipalities, including Columbia and Joplin. *Id.* Columbia and Joplin requested exclusion in the previously filed *O'Fallon* lawsuit. Regarding Columbia and Joplin's lawsuit, the trial court "determined that the damages period began in 2007 and that the Cities' status as putative class members in *O'Fallon* tolled the statute of limitations for their claims against CenturyLink." *Id.* at 362. One of many arguments on appeal was defendant's claim that damages for unpaid taxes fell outside the applicable five-year statute of limitations, and the statute was not tolled by *O'Fallon*. *Id.* at 359, 365. At the outset of its analysis, the appellate court reversed the underlying liability judgment against the defendant,

---

[5] This is unsurprising because tolling for putative class members seeking to pursue subsequent legal actions was not at issue.

rendering the tolling issue moot.  *Id.* at 365.  Regardless, the appellate court "[chose] to address CenturyLink's [tolling] argument because it likely will come up again on remand . . ." *Id.*  Citing *Rolwing*, the court held, "[p]utative membership **in a Missouri class action** lawsuit **tolls** the statute of limitations." *Id.* (emphasis added). "CenturyLink's reliance on *Rolwing* is misplaced, as that case dealt with a pending class action lawsuit in a different jurisdiction, which is not a basis for tolling under Missouri law." *Id.*  Consistent with the approach outlined in *State Farm*, *supra*, this Court should also consider *City of Columbia* when addressing the issue presented here.  Like all other post-*American Pipe* cases, *City of Columbia* held that putative class members' individual claims in a pending class action are tolled when the claim is asserted.

Apart from *Speer*, the cases discussed above address whether tolling arising from a prior class action extends to subsequently filed claims. The outcomes varied based on the facts presented and the parties' arguments regarding *American Pipe*.  *City of Columbia* differs only in that it permits such tolling when the prior class action on which tolling is based was also filed in Missouri.  Although *City of Columbia* cited *Rolwing* in reaching that conclusion, it offered little explanation as to how *Rolwing* adopted or relied upon a bright-line distinction between in-state and out-of-state class actions. Regardless, those cases address circumstances far removed from the issue before this Court.  None of these cases dispute that putative class members' claims are tolled during the pendency of the same class action in which those claims are asserted.

## G.    Missouri Law Requires Tolling of the Laborers' MMWL Claim

In resolving this issue, the Court should look to the Tenth Circuit's decision in *State Farm* for guidance.  While *State Farm* addressed whether a plaintiff's claim was tolled by an earlier class action, it also addressed the threshold issue presented here: whether the claims of putative class members are tolled upon the filing of the class action.  540 F.3d at 1228-29.  *State Farm* looked

18

to Colorado law (*i.e.*, the state law of the underlying claim). *Id.* at 1228. This included any state supreme court or appellate decisions addressing tolling principles applicable to class claims and the state's procedural rules governing class actions. *Id.* Following *State Farm*'s approach, this Court should conclude that the MMWL putative class members' claims were tolled when the class claim was first asserted.

Like Colorado in *State Farm*, Missouri's Rule 52.08 is substantially identical to Federal Rule of Civil Procedure 23. *See State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 378 (Mo. App. W.D. 1997) ("Missouri's Rule 52.08 is identical to Federal Rule 23 ...."). And Missouri Supreme Court Rules "shall have the force and effect of law." MO Const. art. V, § 5.[6] Also, like Colorado, Missouri state courts look to federal court interpretations of Rule 23 when examining Rule 52.08 (*e.g.*, *American Pipe*). *See Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 376 (Mo.App. E.D. 2005) ("Because Missouri Rule 52.08 and Fed.R.Civ.P. 23 are identical, we may consider federal interpretations of Rule 23 in interpreting Rule 52.08."); *Hope v. Nissan North America, Inc.*, 353 S.W.3d 68, 75 (Mo.App. W.D. 2011) (same). In examining Colorado law, *State Farm* relied on a Colorado Supreme Court decision holding that the filing of a class action tolls the statute of limitations for all putative class members. 540 F.3d at 1228. Here, the relevant Missouri authority includes both the Missouri Supreme Court's decision in *Rolwing* and the Missouri Court of Appeals in *City of Columbia*. As discussed above, both opinions are consistent with the tolling that the Plaintiffs seek and contain nothing that would justify the contrary result.

Relying on *American Pipe*'s Rule 23 tolling analysis, *State Farm* held that the claims of Colorado putative class members were tolled upon the filing of the class action. 540 F.3d at

---

[6] That section further states, "[t]he rules shall not change substantive rights . . ." However, as discussed in *American Pipe* and *State Farm*, tolling a statute of limitations would not impact the substantive rights set forth in the MMWL. *American Pipe*, 414 U.S. at 554; *State Farm*, 540 F.3d at 1229.

1229. Just as *State Farm* applied *American Pipe*'s reasoning under Colorado Rule 23, that same reasoning applies with equal force to Missouri Rule 52.08. "Conceptually, *American Pipe* incarnates the principle that the class action is a representative creature." *Id.* at 1228 (citing *American Pipe,* 414 U.S. at 550). "[T]he filing of a class action . . . causes the courts to treat 'members of the asserted class' as if they 'hav[e] instituted their own actions' . . . and they have 'the benefit of tolling ... for as long as the class action purports to assert their claims.' " *Id.* Doing so is "necessary to advance the goals of Rule 23, namely 'the efficiency and economy of litigation.' " *Id.* (quoting *American Pipe,* 414 U.S. at 553). This reasoning applies equally in Missouri under Rule 52.08. *See State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 860-61 (Mo. 2008) (Class actions are designed to provide an "economical means for disposing of similar lawsuits" . . . "courts must not forget that the underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand . . ."). Applying that reasoning does not contradict *Rohwing* or *City of Columbia*; rather, it applies the same logic to materially indistinguishable facts as those presented in *Speer*.

### III.    Conclusion

The weight of the authority supports a single conclusion: the MMWL claims of putative class members were tolled when Plaintiffs first asserted the Rule 23 class claim on July 18, 2022. Nearly all of the cases discussed above address a different question—whether a subsequently filed lawsuit may benefit from tolling based on an earlier class action.

Respectfully Submitted,

*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS 17420
**Donelon, P.C.**
4600 Madison, Ste. 810
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

Ashley Atwell-Soler, KS 24047
**Holman Schiavone, LLC**
4600 Madison Ave., Suite 810
Kansas City, MO 64112
Tel: (816) 447-3006
Fax: (816) 283-8739
AAtwell@hslawllc.com

**ATTORNEYS FOR PLAINTIFFS**

## Certificate of Service

I hereby certify that on <u>June 23, 2026</u> a true and correct copy of the above and foregoing was sent via this Court's CM/ECF policies, procedures, and standing orders to:

Brett C. Bartlett
Alex W. Simon
Hillary Massey
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E. Suite 2500
Atlanta, GA 30309
Telephone: 404-888-1875
Facsimile: 404-724-1575
bbartlett@seyfarth.com
asimon@seyfarth.com
HMassey@seyfarth.com

Michael L. Blumenthal
Linda A. Adeniji
Natalie Anne Costero
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, MO 64112
Telephone: (816) 756-0700
Facsimile: (816) 756-3700
mike@sbhlaw.com
linda@sbhlaw.com
ncostero@seyfarth.com

**Attorneys for Defendant**

*/s/ Brendan J. Donelon*
Brendan J. Donelon

Attorney for Plaintiff